■ In the Matter of SUN CAST REALTY CORP. et al., Appellants, v STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent State of New York Division of Housing and Community Renewal dated December 19, 1988, which, *inter alia,* found that the "initial stabilized rent" of the apartment of the tenant Judith Cohen was $423.32 per month, the petitioners appeal from a judgment of the Supreme Court, Kings County (Irving S. Aronin, J.), dated February 6, 1990, which dismissed the proceeding.

Ordered that the judgment is affirmed, with one bill of costs.

The petitioners Sun Cast Realty Corp. (hereinafter Sun Cast) and Recycling Carroll Gardens, Inc. (hereinafter Recycling) are the current and former owners of a building located at 505 Court Street in Brooklyn. In 1979, Recycling acquired

the building, which had previously been used for commercial purposes, and obtained a partial tax abatement, pursuant to Administrative Code of the City of New York former § J51-2.5, in order to renovate it. After the renovation, the building contained 123 residential units. In May 1981, before any tenants had moved into it, the Attorney-General accepted for filing an offering plan to convert the building to cooperative ownership. The plan was subsequently approved.

On July 15, 1981, the respondent Judith Cohen signed a subscription agreement to purchase the shares allocated to apartment 2-B. However, because Recycling was unable to sell enough units to declare the offering plan effective, the conversion was delayed. On November 4, 1981, Cohen and Recycling executed an interim lease allowing Cohen to occupy the apartment at a monthly rent of 140% of the estimated monthly maintenance charges, or $423.32. The term of the lease was to commence on November 25, 1981, and it was to terminate one year later or on the date that title closed pursuant to the cooperative conversion plan, whichever was earlier. The lease provided that either party could cancel it, upon 90 days notice, in the event that the plan was abandoned.

Recycling enrolled the building with the Rent Stabilization Association on January 20, 1982, and abandoned the plan on August 20, 1982. The terms of the abandonment provided that tenants could remain in possession of their apartments, at the same rent, until November 30, 1982, or until new leases were executed. On September 1, 1982, Cohen and Recycling executed a new lease for apartment 2-B. The term of the lease was from December 1, 1982, to November 30, 1983, and the monthly rent was $660.

The issue in this case is what was the initial legal regulated rent for the apartment after the cooperative conversion plan had been abandoned: $423.32 or $660. The State of New York Division of Housing and Community Renewal (hereinafter the DHCR), determined that it was $423.32. We agree.

The Code of the Rent Stabilization Association of New York City, Inc., in effect on March 31, 1984, is applicable to this case (see, 9 NYCRR 2526.1 [a] [4]). However, the result would be the same under the present Code.

Former Code of the Rent Stabilization Association of New York City, Inc. § 2 (i) (A) (1) (g) (currently 9 NYCRR 2521.1 [j]) provides, in pertinent part: "The Initial Legal Regulated Rent for dwelling units whose owners are admitted to membership

under this Code solely as a condition of receiving or continuing to receive benefits pursuant to Section J51-2.5 of the Administrative Code * * * shall be the rent charged the initial rent stabilized tenant".

It is not disputed that Recycling began receiving benefits pursuant to Administrative Code former § J51-2.5 in 1979. Thus, when Cohen signed the interim lease, apartment 2-B was subject to regulation. Since she was the first tenant to lease and occupy the apartment, the DHCR correctly found that she was the initial rent stabilized tenant. Moreover, since the first rent charged Cohen was $423.32, the DHCR correctly found that $423.32 was the initial legal regulated rent for the apartment and remained so even after abandonment of the cooperative conversion plan (see, 9 NYCRR 2522.5 [h] [4] [ii]; former Code of Rent Stabilization Association of New York City, Inc. § 61 [7]). Bracken, J. P., Sullivan, O'Brien and Ritter, JJ., concur.